UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RHONDA JENNINGS**, on behalf of herself and others similarly situated, | : : | **CASE NO. 2:24-cv-03358** |
| Plaintiff, | : : : | **CHIEF JUDGE SARAH D. MORRISON** |
| v. | : : | |
| **SUN BEHAVIORAL HEALTH, INC.**, | : : | **MAGISTRATE JUDGE CHELSEY M. VASCURA** |
| Defendant. | : | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND DISMISSAL WITH PREJUDICE**

Representative Plaintiff Rhonda Jennings ("Representative Plaintiff") and Defendant SUN Behavioral Health, Inc. ("Defendant") (collectively, Representative Plaintiff and Defendant referred to as the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") collective action settlement. Representative Plaintiff's Federal Rule of Civil Procedure 23 claims are being dismissed without prejudice.[1] The settlement was reached by experienced wage and hour counsel after arms-length, good faith settlement negotiations with the assistance of a neutral third-party mediator.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement" or "Settlement");

**Exhibit 2**: Declaration of Adam C. Gedling ("Gedling Decl."); and

**Exhibit 3**: Proposed Order Granting Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice.

**Exhibit 4:** Individual Settlement Award Amounts

---

[1] Although these claims are dismissed without prejudice, Representative Plaintiff and Opt-In Plaintiffs have released all Ohio claims against Defendant through their settlement agreement.

1

For the reasons set forth in the attached Memorandum in Support, the Parties respectfully requests that the Court approve the FLSA settlement reached by the Parties and dismiss this case with prejudice.

Respectfully submitted,

| | |
|---|---|
| /s/ Adam C. Gedling<br>Matthew J.P. Coffman (0085586)<br>Adam C. Gedling (0085256)<br>Kelsie N. Hendren (01000041)<br>Tristan T. Akers (0102298)<br>**COFFMAN LEGAL, LLC**<br>1550 Old Henderson Road<br>Suite 126<br>Columbus, Ohio 43220<br>Phone: 614-949-1181<br>Fax: 614-386-9964<br>Email: mcoffman@mcoffmanlegal.com<br>　　　　agedling@mcoffmanlegal.com<br>　　　　khendren@mcoffmanlegal.com<br>　　　　takers@mcoffmanlegal.com<br><br>*Counsel for Representative Plaintiff and Opt-In Plaintiffs* | /s/ John E. Joseph<br>John E. Joseph (Ohio Bar No. 74445)<br>**Holland & Knight LLP**<br>1650 Market Street Suite 3300<br>Philadelphia, Pennsylvania 19103<br>Phone: (215) 252-9576<br>John.joseph@hklaw.com<br><br>/s/ Aron Z. Karabel<br>Aron Z. Karabel (*pro hac vice*)<br>Matthew A. Caplan (*pro hac vice*)<br>Devin J. Dunkley (*pro hac vice*)<br>**Holland & Knight LLP**<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 37219<br>(615) 244-6380<br>Aron.Karabel@hklaw.com<br>Matthew.Caplan@hklaw.com<br>Devin.Dunkley@hklaw.com<br><br>*Counsel for Defendant* |

**MEMORANDUM IN SUPPORT**

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Summary of the Claims and Defenses**

On June 21, 2024, Representative Plaintiff, on behalf of herself and other similarly situated employees, filed a Complaint (the "Action") against Defendant for violations of the FLSA and Ohio law. Compl., ECF No. 1; Gedling Decl., Ex. 2, ¶ 9.

In the Action, Representative Plaintiff alleges that Defendant failed to pay her and others similarly situated for all overtime hours worked as a result of Defendant applying a meal break deduction to its healthcare care employees' daily hours worked even though they often were unable to take a meal break, took a shortened meal break, or had their meal break interrupted with job duties. Gedling Decl., Ex. 2, ¶ 10. Defendant denies these allegations and asserts that it has properly paid its hourly employees, including Representative Plaintiff and all Opt-In Plaintiffs, for all hours worked.

In addition to Representative Plaintiff, ten (10) other individuals (collectively, "Opt-In Plaintiffs") (Representative Plaintiff and Opt-In Plaintiffs collectively referred to as "Plaintiffs") joined the Action by filing signed consent forms. Gedling Decl., Ex. 2, ¶ 11.

The Parties agreed to engage in settlement discussions for Plaintiffs' claims. Defendant provided payroll and timekeeping records for Plaintiffs, and Plaintiffs' counsel ("Plaintiffs' Counsel") constructed a damages analysis using data provided by Defendant. After good faith settlement negotiations, the Parties reached a settlement. *Id.*, ¶ 12. The overall settlement reached by the Parties, as memorialized in the Agreement, is referred to herein as the "Settlement."

    B.     **Summary of Key Settlement Terms**

The total settlement amount is $13,000.00 (the "Global Settlement Fund"). This amount

3

includes: (a) all Settlement Awards[2] to Plaintiffs, (b) the Service Award to Representative Plaintiff, and (c) Plaintiffs' Counsel's attorneys' fees and litigation expenses. Gedling Decl., Ex. 2, ¶ 14. If the Court approves the Settlement, the Settlement Award payments will be sent to Representative Plaintiff and Opt-In Plaintiffs[3]. In exchange for the total settlement amount and other consideration provided for in the Agreement, this Action will be dismissed with prejudice and Plaintiffs will release Defendant from all federal, state, and local wage-and-hour claims, rights, demands, liabilities, and causes of action that were asserted, or could have been asserted, under the FLSA or any other applicable state or local wage-and-hour law relating to unpaid and/or untimely payment of wages, overtime, liquidated damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and service awards. *Id.*, ¶ 17.

The Agreement also calls for a Service Award of $1,500.00 for Representative Plaintiff, and a payment to Plaintiffs' Counsel of $4,333.33 (or one-third of the Global Settlement Fund) for attorneys' fees and $405.00 for reimbursement of Plaintiffs' Counsel's litigation expenses incurred in the prosecution of this Action. *Id.*, ¶¶ 25–27.

II. **PROPRIETY OF APPROVAL OF THE SETTLEMENT**

    A. **The Overall Settlement Is Fair, Reasonable, and Adequate.**

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *4 (S.D. Ohio Sept. 25, 2020) (Rice, J.) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to the following seven (7) factors in determining whether a collective action settlement is fair, reasonable, and adequate:

---

[2] All terms have the same meaning as set forth in the Agreement.
[3] The individual Settlement Award Amounts for each Plaintiff is attached as **Exhibit 4**.

4

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *2 (N.D. Ohio Mar. 26, 2019) (quoting *UAW*, 497 F.3d at 631). Application of these principles to this Settlement demonstrates that approval of the same is warranted.

      1.    *No indicia of fraud or collusion exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *3 (N.D. Ohio Oct. 10, 2018) (internal quotation marks and further citation omitted). Here, the Agreement was achieved only after arms'-length and good faith negotiations between the Parties and after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this Action were to continue to be prosecuted. As such, because there is no indicia of fraud or collusion, this factor favors approval of the Settlement.

      2.    *The complexity, expense, and likely duration of continued litigation favor approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (citations omitted) ("Most class actions

5

are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."). Moreover, the Parties disagree over the merits of Plaintiffs' claims as well as whether Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Plaintiffs promptly and efficiently and amplifies the benefits of that relief through the economies of class/collective resolution. Gedling Decl., Ex. 2, ¶ 24.

        3.       *<u>Investigation was sufficient to allow the Parties to act intelligently.</u>*

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced payroll and timekeeping records for Plaintiffs. Gedling Decl., Ex. 2, ¶ 12. As such, the Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Plaintiffs prevail on their claims, which allowed the Parties to negotiate a settlement based on facts and data. *Id.*

Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well understood by both sides.

        4.       *<u>The risks of litigation favor approval.</u>*

Counsel for each side believes in the merits of its respective client's/clients' positions while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises various defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Accordingly, if this Action is not settled, it is possible that Plaintiffs could receive no compensation, or, if they do receive any compensation, it will be only after protracted litigation. By settling the Action at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the Settlement. *Satterly*, 2020 WL 6536342, at *6 ("[T]he settlement

provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor.").

      5.     *Plaintiffs' Counsel's recommendation favors approval.*

The Parties' respective counsel is each experienced in wage-and-hour collective and class actions, has acted in good faith, and has represented its respective client's/clients' best interests in reaching the Settlement. Plaintiffs' Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiffs, as described in the Declaration of Adam C. Gedling. Ex. 2, ¶¶ 13, 20. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5. Accordingly, this factor favors approval of the Settlement.

      6.     *The reaction of absent class members favors approval.*

If the Court approves the Settlement, Plaintiffs will each receive a Settlement Award payment that, in the Parties' counsels' opinions, is fair and reasonable. Plaintiffs' Counsel has not received any indication that any Plaintiff would have an objection to this Settlement. Gedling Decl., Ex. 2, ¶ 16.

      7.     *The public interest favors approval.*

As the Sixth Circuit noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (further citation omitted). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

B.     **The Settlement Distributions Are Fair, Reasonable, and Adequate.**

As a part of the scrutiny that it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (Marbley, J.) (citation omitted). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Plaintiffs.

1.     *The individual payments are reasonable and adequate.*

The Settlement compensates Plaintiffs for alleged unpaid overtime wages on a *pro rata* basis dependent on the amount of alleged unpaid overtime owed to Plaintiffs as calculated by Plaintiffs' Counsel. "This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of, and harm allegedly suffered by, the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 WL 6536342, at *8.

Specifically, Plaintiff's alleged unpaid overtime damages were calculated by totaling the hours for all meal break deductions that were applied to Plaintiffs' compensable hours worked during the 3-year lookback period and multiplying these hours by one-and-one-half times each respective Plaintiff's regular rate of pay. The total amount of alleged unpaid overtime damages for all Plaintiffs is $4,610.51. Liquidated damages are equal to the amount of alleged unpaid overtime damages, to wit, $4,610.51, for a total of $9,221.03 in alleged unpaid overtime and liquidated damages.

The total settlement amount of $13,000.00 is more than 140% the total, fully liquidated damages calculation, and Plaintiffs' individual Settlement Award payments, after deducting attorney fees, costs, and the Service Award payment, represent approximately 146% of their calculated alleged overtime damages (and approxiamtely73% of their total damages including liquidated damages) based on each Plaintiff having 100% of their unpaid meal breaks applied back

8

to their daily hours worked. Gedling Decl., Ex. 2, ¶ 16.

2. *Representative Plaintiff's Service Award is proper and reasonable.*

The Settlement provides for a Service Award of $1,500 to Representative Plaintiff, in addition to her individual Settlement Award payment, for her service to the class. Gedling Decl., Ex. 2, ¶ 25. Courts routinely approve service awards to representative plaintiffs in class and collective actions because they "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Thus, service awards are "routinely approved for the simple reason to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Satterly*, 2020 WL 6536342, at *8 (citation omitted).

The proposed Service Award set forth in the Agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Al-Sabur, et al. v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving a service award of $12,500 for a representative plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (approving a $10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving a $10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (Black, J.) (approving a "modest class representative award" request of $10,000 to each of the class representatives). Moreover, while each of the Opt-In Plaintiffs will only be releasing their federal and state wage and hour claims against Defendant, Representative Plaintiff will be signing a general release and waiver against Defendant for all claims known or unknown at this time, in accordance with the Agreement.

9

Here, Representative Plaintiff contributed time, effort, and detailed factual information that enabled Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter that, in Plaintiffs' Counsel's opinion, fairly and adequately compensates the collective for alleged unpaid wages. As such, the time and efforts that Representative Plaintiff provided supports the requested Service Award. Gedling Decl., Ex. 3, ¶ 25

3. *The requested attorneys' fees to Plaintiffs' Counsel are proper and reasonable.*

After the Court has confirmed that the terms of the Settlement are fair to Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances" and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

Here, Plaintiffs are requesting that the Court approve reasonable attorneys' fees of one-third (1/3) of the settlement fund. Gedling Decl., Ex. 2, ¶ 26. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly*, 2020 WL 6536342, at *10 (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789

10

(N.D. Ohio 2010).

A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.); *see Myres v. Hopebridge, LLC*, No. 2:20-cv-5390, 2023 WL 2399056, at *6 (S.D. Ohio Feb. 21, 2023) (Sargus, J.); *Smith v. Local Cantina, LLC*, No. 2:20-cv-03064, 2022 WL 1183325, at *7 (S.D. Ohio Apr. 19, 2022) (Graham, J.); *O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio Nov. 2, 2021) (Watson, J.); *Harsh v. Kalida Mfg., Inc.*, No. 3:18-cv-2239, 2021 WL 4145720, at *8 (N.D. Ohio Sept. 13, 2021); *Bailey v. Paradies Shops, LLC*, No. 2:20-cv-2610, 2021 WL 3662466, at *6 (S.D. Ohio Aug. 18, 2021) (Deavers, M.J.) (finding a one-third attorney fees request to be reasonable and noting that "[d]istrict courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount"); *Mullins v. Data Mgmt. Co.*, No. 1:20-cv-214, 2021 WL 2820560, at *6, *8 (S.D. Ohio June 21, 2021) (McFarland, J.); *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *6 (S.D. Ohio Nov. 5, 2020) (Rice, J.).

Furthermore, Plaintiffs' Counsel accepted this case on a contingency fee basis and advanced all litigation fees, costs, and expenses. Gedling Decl., Ex. 2, ¶ 26. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.).

> 4. *The Court should authorize reimbursement to Plaintiffs' Counsel of its out-of-pocket expenses incurred in this Action.*

Plaintiffs' Counsel should also be reimbursed for its out-of-pocket expenses and costs in

the amount of $405.00 for the filing fee. Gedling Decl., Ex. 2, ¶ 28. "Under the common fund doctrine, Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

### III. CONCLUSION

The Parties submit that the Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties requests that this Court: (1) enter the proposed Order Granting their Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve the Service Award payment to Representative Plaintiff; (3) approve Plaintiffs' Counsel's request for attorneys' fees and expenses; and (4) retain jurisdiction to enforce the Settlement if necessary.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Adam C. Gedling*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (0100041)
Tristan T. Akers (0102298)
1550 Old Henderson Road
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com
khendren@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Representative Plaintiff and Opt-In Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was filed electronically using the CM/ECF systems this 24th day of March 2025, which will automatically serve notice upon all counsel of record.

                                       */s/ Adam C. Gedling*
                                       Adam C. Gedling